# EXHIBIT 5

**GAO**
**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**

441 G St. N.W.  
Washington, DC 20548

Comptroller General  
of the United States

June 2, 2022

The Honorable Merrick B. Garland  
Attorney General  
Department of Justice  
950 Pennsylvania Avenue, NW  
Washington, D.C. 20530

**Priority Open Recommendations: Department of Justice**

Dear Attorney General Garland:

The purpose of this letter is to provide an update on the overall status of the Department of Justice's (DOJ) implementation of GAO's recommendations and to call your personal attention to areas where open recommendations should be given high priority.[1] In November 2021, we reported that on a government-wide basis, 76 percent of our recommendations made 4 years ago were implemented.[2] DOJ's recommendation implementation rate was 79 percent. As of January 20, 2022, DOJ had 111 open recommendations. Fully implementing these open recommendations could significantly improve agency operations.

Since our June 2021 letter, DOJ has implemented four of our 12 open priority recommendations. In doing so, DOJ successfully developed and improved its efforts to assess how it is managing and maximizing its use of industry reported drug data, including more proactively identifying problematic drug transactions.[3] DOJ also established a cybersecurity risk management strategy and defined and documented its approach to coordination between its cybersecurity and enterprise risk management functions, improving its identification of acceptable risk levels and response strategies, and better ensuring that cyber risks are incorporated into department-level risk mitigation activities.[4]

DOJ has eight priority recommendations remaining from those we identified in the June 2021 letter. We ask for your continued attention to these remaining priority recommendations. We are also adding two recommendations related to the Federal Bureau of Investigation's (FBI) federal coordination of its cybersecurity requirements bringing the total number of priority

---

[1]Priority recommendations are those that GAO believes warrant priority attention from heads of key departments or agencies. They are highlighted because, upon implementation, they may significantly improve government operation, for example, by realizing large dollar savings; eliminating mismanagement, fraud, and abuse; or making progress toward addressing a high-risk or duplication issue.

[2]GAO, *Performance and Accountability Report: Fiscal Year 2021*, GAO-22-4SP (Washington, D.C.: Nov. 15, 2021).

[3]GAO, *Drug Control: Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders*, GAO-20-118 (Washington, D.C.: Jan. 29, 2020).

[4]GAO, *Cybersecurity: Agencies Need to Fully Establish Risk Management Programs and Address Challenges*, GAO-19-384 (Washington, D.C.: Jul. 25, 2019).

recommendations to 10. (See the enclosure for the list of recommendations and actions needed to implement them.)

The 10 priority recommendations fall into the following six major areas.

**Efforts to Combat Illicit Opioid Use.** Drug misuse—the use of illicit drugs and the misuse of prescription drugs—has been a persistent and long-standing public health issue in the United States. GAO recently added it to it High Risk List. Our two priority recommendations in this area will assist the Drug Enforcement Administration (DEA) in strengthening its guidance to and communication with registrants, which is intended to support its Office of Diversion Control's mission of preventing diversion while ensuring an adequate and uninterrupted supply of controlled substances for legitimate medical needs, and demonstrating how it is strategically linking measurable goals and targets to its diversion control program efforts and activities.

**Federal Prison System.** The Bureau of Prisons (BOP) has faced challenges fully staffing its institutions, and staffing shortfalls affect inmate custody and care. By implementing the three priority recommendations in this area, BOP would have a more reliable method for calculating staffing levels, an assessment of the risks related to staff overtime use, and a determination of the outcomes associated with its staffing incentives.

**FBI Whistleblower Retaliation Complaints.** Whistleblowers help safeguard the federal government against waste, fraud, and abuse—however, they also risk retaliation by their employers. Implementing one priority recommendation in this area requires that DOJ update its regulations to be consistent with statute and other FBI guidance.

**Immigration Courts.** Each year, immigration judges within DOJ's Executive Office for Immigration Review (EOIR) issue decisions for hundreds of thousands of cases of foreign nationals charged as removable under U.S. immigration law. Implementing one priority recommendation in this area would improve workforce planning for the immigration court system, which has a backlog of well over one million cases.

**Cybersecurity.** Federal and state government agencies face a growing number of cyber threats to their systems and data, as illustrated by recent high profile cyberattacks. By fully implementing two priority recommendations in this area, DOJ could improve its coordination with other federal agencies on cybersecurity requirements and assessments of state agencies to better manage fragmentation and the associated costs. The two recommendations focus on the FBI ensuring it has cybersecurity policies for states consistent with other federal and National Institute of Standards and Technology (NIST) guidance and revising assessment policies to maximize coordination.

**Improper Payments.** Improper payments are a long-standing problem in the federal government, estimated governmentwide at about $281 billion for fiscal year 2021. We recommended DOJ revise its process for conducting improper payment risk assessments for its Law Enforcement program.[5] By fully implementing this priority recommendation, DOJ could better ensure its risk assessment reliably results in determining whether the Law Enforcement program may be susceptible to significant improper payments.

---

[5]DOJ's Law Enforcement program is one of its five mission-aligned program groups and includes, among other components, the Bureau of Alcohol, Tobacco, Firearms, and Explosives; the Drug Enforcement Administration; and the Federal Bureau of Investigation.

- - - - -

In March 2021, we issued our biennial update to our High Risk List, which identifies government operations with greater vulnerabilities to fraud, waste, abuse, and mismanagement or the need for transformation to address economy, efficiency, or effectiveness challenges.[6]

One of our high-risk areas—national efforts to prevent, respond to, and recover from drug misuse—focuses directly on DOJ and other agencies. In addition, also related to DOJ, we identified strengthening management of the federal prison system as an emerging issue in the report.

Several other government-wide high-risk areas also have direct implications for DOJ and its operations. These include (1) improving the management of IT acquisitions and operations, (2) improving strategic human capital management, (3) managing federal real property, (4) ensuring the cybersecurity of the nation,[7] and (5) government-wide personnel security clearance process. We urge your attention to the high-risk issues related to DOJ as well as the government-wide high-risk issues as they relate to DOJ. Progress on high-risk issues has been possible through the concerted actions and efforts of Congress, the Office of Management and Budget, and the leadership and staff in agencies, including within DOJ. In March 2022, we issued a report on key practices to successfully address high-risk areas, which can be a helpful resource as your agency continues to make progress to address high-risk issues.[8]

Copies of this report are being sent to the Director of the Office of Management and Budget and appropriate congressional committees, including the Committees on Appropriations, Budget, Homeland Security and Governmental Affairs, and Judiciary, United States Senate; and the Committees on Appropriations, Budget, Homeland Security, Judiciary, and Oversight and Reform, House of Representatives.

In addition, the report will be available on the GAO website at http://www.gao.gov.

I appreciate DOJ's continued commitment to these important issues. If you have any questions or would like to discuss any of the issues outlined in this letter, please do not hesitate to contact me or Charles Michael Johnson, Jr., Managing Director, Homeland Security and Justice Team at JohnsonCM@gao.gov or (202) 512-8777. Contact points for our offices of Congressional Relations and Public Affairs may be found on the last page of this report. Our teams will continue to coordinate with your staff on all of the 111 open recommendations, as well as those additional recommendations in the high-risk areas for which DOJ has a leading role. Thank you for your attention to these matters.

---

[6]GAO, *High-Risk Series: Dedicated Leadership Needed to Address Limited Progress in Most High-Risk Areas*, GAO-21-119SP (Washington, D.C.: Mar. 2, 2021).

[7]With regard to cybersecurity, we also urge you to use foundational information and communications technology supply chain risk management practices set forth in our December 2020 report: GAO, *Information Technology: Federal Agencies Need to Take Urgent Action to Manage Supply Chain Risks,* GAO-21-171 (Washington, D.C.: Dec. 15, 2020).

[8]GAO, *High-Risk Series: Key Practices to Successfully Address High-Risk Areas and Remove Them from the List*, GAO-22-105184 (Washington, D.C.: Mar 3, 2022).

Sincerely yours,

*Gene L. Dodaro* (signature)

Gene L. Dodaro
Comptroller General of
the United States
Enclosure – 1

cc:    Lisa Monaco, Deputy Attorney General, Office of the Deputy Attorney General
Christopher Wray, Director, FBI
Michael Horowitz, Inspector General
Lee Lofthus, Assistant Attorney General for Administration, Justice Management Division
Eleanor Carpenter, Director, Office of Attorney Recruitment and Management
Jeffrey Ragsdale, Director and Chief Counsel, Office of Professional Responsibility
David Neal, Director, EOIR
Louis J. Milione, Principal Deputy Administrator, DEA
Kristi N. O'Malley, Senior Advisor, Office of the Administrator, DEA
Matthew J. Strait, Deputy Assistant Administrator, Office of Diversion Control Regulatory, Diversion Control Division, DEA
Thomas W. Prevoznik, Deputy Assistant Administrator, Office of Diversion Control Policy, Diversion Control Division, DEA
Eric Triana, Deputy Assistant Administrator, Office of Diversion Control Operations, Diversion Control Division, DEA
Melinda Rogers, Chief Information Officer
Michael Carvajal, Director, BOP
The Honorable Shalanda Young, Director, Office of Management and Budget

Enclosure

# Priority Open Recommendations to the Department of Justice (DOJ)

## Efforts to Combat Illicit Opioid Use

*Prescription Drugs: More DEA Information about Registrants' Controlled Substances Roles Could Improve Their Understanding and Help Ensure Access*. GAO-15-471. Washington, D.C.: June 25, 2015.

**Recommendation**: In order to strengthen the Drug Enforcement Administration's (DEA) communication with and guidance for registrants and associations representing registrants, as well as supporting the Office of Diversion Control's mission of preventing diversion while ensuring an adequate and uninterrupted supply of controlled substances for legitimate medical needs, the Deputy Assistant Administrator for the Office of Diversion Control should solicit input from distributors, or associations representing distributors, and develop additional guidance for distributors regarding their roles and responsibilities for suspicious orders monitoring and reporting.

**Action Needed:** DEA did not expressly agree or disagree with our recommendation, but raised concerns, stating that "short of providing arbitrary thresholds to distributors, it cannot provide more specific suspicious orders guidance because the variables that indicate a suspicious order differ among distributors and their customers." In September 2019, DEA told us that the agency had refocused its efforts on revising draft regulations in line with the SUPPORT Act.[9] On November 2, 2020, DEA published a notice of proposed rulemaking entitled *Suspicious Orders of Controlled Substances*.[10] DEA reports that the proposed rule (1) codifies existing legal obligations related to due diligence and suspicious order monitoring and reporting; and (2) provides additional guidance regarding the nature and timing of the reporting requirement.

DEA reported in May 2021 that the comment period for the proposed rule closed March 29, 2021, and that DEA was actively drafting the final rule with consideration of the comments. In April 2022, DEA reported that the agency anticipates publishing the final rule in June 2022. While DEA has reported taking some action to address this recommendation, as noted above, until the regulations are finalized, we cannot determine if these changes will fully address the recommendation. We will continue to monitor DEA's progress in addressing our recommendation. Improved DEA communication with and guidance for registrants may address some of the concerns from these registrants about their roles and responsibilities, while also helping registrants make business decisions that balance ensuring access for patients with legitimate needs with controlling abuse and diversion.

**High Risk Area:** National Efforts to Prevent, Respond to, and Recover from Drug Misuse

**Director:** Alyssa M. Hundrup, Health Care
**Contact information:** HundrupA@gao.gov, (202) 512-7114

---

[9]SUPPORT for Patients and Communities Act, Pub. L. No. 115-271, § 3292, 132 Stat. 3894, 3956-58.

[10]Drug Enforcement Administration, Suspicious Orders of Controlled Substances, 85 Fed. Reg. 69282 (proposed November 2, 2020) (to be codified at 21 C.F.R. pt. 1300 and 1301).

**Director:** Triana McNeil, Homeland Security and Justice
**Contact information:** McNeilT@gao.gov, (202) 512-8777

*Drug Control: Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders.* GAO-20-118. Washington, D.C.: January 29, 2020.

**Recommendation:** The DEA Administrator should establish outcome-oriented goals and associated measurable performance targets related to opioid diversion activities, using data it collects, to assess how the data it obtains and uses supports its diversion control activities.

**Action Needed:** DOJ neither agreed nor disagreed with this recommendation. DEA reported in February 2022 that its Chief Data Officer is working with Office of Diversion Control officials to establish outcome-oriented goals and associated measurable performance targets related to opioid diversion activities. The agency also reported that it will draft a strategy report that will detail its strategic planning and identify these goals and targets, but it has not finalized the timeframe for doing so. To address this recommendation, DEA needs to provide documentation demonstrating it has established goals and targets that link to its already established output measures, and document how these goals and targets relate to the agency's diversion control program efforts and use of industry-reported data. This would help clarify how DEA plans to determine whether it is meeting its goals within the newly established system.

**High Risk Area:** National Efforts to Prevent, Respond to, and Recover from Drug Misuse

**Director:** Triana McNeil, Homeland Security and Justice
**Contact information:** McNeilT@gao.gov, (202) 512-8777

**Federal Prison System**

*Bureau of Prisons: Opportunities Exist to Better Analyze Staffing Data and Improve Employee Wellness Programs.* GAO-21-123. Washington, D.C.: February 24, 2021.

**Recommendation:** The Director of the Bureau of Prisons (BOP) should develop and implement a reliable method, or amend existing methods, for calculating staffing levels at BOP institutions.

**Action Needed:** BOP concurred with this recommendation. In June 2021, BOP hired a contractor to address this recommendation and several others from our report. According to the BOP, the contractor is responsible for developing a tool to calculate and forecast staffing levels across the bureau. In February 2022, BOP stated that the contractor had developed an initial assessment of existing BOP methods for calculating staffing levels. Additionally, BOP reported a target date of June 2022 for the contractor to complete the new staffing tool. The development of this tool could better position BOP to take corrective action to address staffing shortfalls.

**Recommendation:** The Director of BOP should conduct a risk assessment of its overtime and augmentation use, including identifying risks to staff, inmates, and institution security; and determining actions to respond, as appropriate.

**Action Needed:** BOP concurred with this recommendation and reported in February 2022 that the aforementioned contractor was finalizing a risk analysis of the agency's current use of overtime and augmentation. As of May 3, 2022, BOP anticipates that the contractor will issue its

final recommendations related to overtime and augmentation in May 2022. This risk analysis could better position BOP to identify how overtime and augmentation might affect inmates and staff.

**Recommendation:** The Director of BOP should assess the outcomes of the staffing incentives it utilizes by developing performance measures and goals, measuring outcomes against them, and adjusting incentives, as appropriate.

**Action Needed:** BOP concurred with this recommendation and reported in February 2022 that the same contractor was finalizing a risk analysis of the agency's current use of staffing incentives. BOP anticipates that the contractor will issue its final recommendations related to incentives at the same time as the overtime and augmentation report in May 2022. This analysis should help BOP determine the effectiveness of staffing incentives.

**Director:** Gretta L. Goodwin, Homeland Security and Justice
**Contact information:** GoodwinG@gao.gov, (202) 512-8777

**Federal Bureau of Investigation (FBI) Whistleblower Retaliation Complaints**

*Whistleblower Protection: Additional Actions Needed to Improve DOJ's Handling of FBI Retaliation Complaints*. GAO-15-112. Washington, D.C.: January 23, 2015.

**Recommendation:** To better ensure that FBI whistleblowers have access to recourse under DOJ's regulations should the individuals experience retaliation, and to minimize the possibility of discouraging future potential whistleblowers, we recommend that the Attorney General clarify in all current relevant DOJ guidance and communications, including FBI guidance and communications, to whom FBI employees may make protected disclosures and, further, explicitly state that employees will not have access to recourse if they experience retaliation for reporting alleged wrongdoing to someone not designated in DOJ's regulations.

**Action Needed:** DOJ agreed with the recommendation. In response to our report, in December 2016, Congress passed and the President signed the FBI Whistleblower Protection Enhancement Act of 2016. This act provides a means for FBI employees to obtain corrective action for retaliation for disclosures of wrongdoing made to supervisors and others in the employees' chain of command. DOJ has since updated some training and guidance but has not updated its regulations to be consistent with current statute. DOJ officials told us that an updated regulation has been in the departmental clearance process since 2018 and reported that they anticipate fully addressing the recommendation by October 2022. To address this recommendation, DOJ would need to update its regulations. Ensuring that guidance, including regulations, always clearly explains to whom an FBI employee can report wrongdoing will help FBI whistleblowers ensure that they are fully protected from retaliation.

**Director:** Triana McNeil, Homeland Security and Justice
**Contact information:** McNeilT@gao.gov, (202) 512-8777

**Immigration Courts**

*Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges*. GAO-17-438. Washington, D.C.: June 1, 2017.

**Recommendation:** To better address current and future staffing needs, the Director of the Executive Office for Immigration Review (EOIR) should develop and implement a strategic workforce plan that addresses, among other areas, key principles of effective strategic workforce planning, including (1) determining critical skills and competencies needed to achieve current and future programmatic results; (2) developing strategies that are tailored to address gaps in number, deployment, and alignment of human capital approaches for enabling and sustaining the contributions of all critical skills and competencies; and (3) monitoring and evaluation of the agency's progress toward its human capital goals and the contribution that human capital results have made toward achieving programmatic results.

**Action Needed:** EOIR agreed with our recommendation. In February 2022, EOIR officials stated that the agency was participating in the development of a DOJ strategic plan which, once completed, would inform EOIR's own strategic plan. EOIR officials also stated that they were beginning work on a separate strategic plan focused specifically on workforce planning, which is intended to align reoccurring workforce needs assessments with the agency's budget development process. According to officials, EOIR also completed a review of the Office of the Chief Immigration Judge workforce in October 2018 that resulted in a new organizational structure and staffing plan for each immigration court. Officials said that the staffing plan addresses and mitigates gaps and updates position descriptions to more clearly define roles and responsibilities.

These are positive steps, but to fully address our recommendation, EOIR needs to continue to develop, and then implement, a strategic workforce plan that addresses key principles of effective strategic workforce planning. Once this strategic workforce plan is completed, EOIR needs to monitor and evaluate the agency's progress toward its human capital goals. By implementing this recommendation, EOIR will be better positioned to address current and future staffing needs to more effectively carry out its mission.

**Director:** Rebecca S. Gambler, Homeland Security and Justice
**Contact information:** GamblerR@gao.gov, (202) 512-8777

**Cybersecurity**

*Cybersecurity: Selected Federal Agencies Need to Coordinate on Requirements and Assessments of States*. GAO-20-123. Washington, D.C.: May 27, 2020.

**Recommendation:** The FBI Director should, in collaboration with the Office of Management and Budget (OMB), solicit input from Centers for Medicaid and Medicare (CMS), Internal Revenue Service (IRS), Social Security Administration (SSA), and state agency stakeholders on revisions to its security policy to ensure that cybersecurity requirements for state agencies are consistent with other federal agencies and NIST guidance to the greatest extent possible.

**Action Needed:** The FBI agreed with this recommendation. As of February 2022, the FBI established a Criminal Justice Information Services (CJIS) Policy Modernization Task Force consisting of representatives from the CMS and IRS, as well as representatives from state law

enforcement agencies and courts, to advise FBI on updates to its cybersecurity requirements. In addition, the FBI created a Data Categorization Task Force to review and categorize criminal justice information in accordance with guidance from NIST. Both task forces have had initial discussions on a portion of FBI's cybersecurity requirements and assessment policies that affect state agencies. The FBI also noted that it expects to further align its CJIS policy with guidance from NIST to be more consistent with how other federal agencies use this guidance in their security policies.

These are positive steps that could lead to less variance among the federal agencies' cybersecurity requirements for states. However, the discussions are in the early stages and it is too soon to assess FBI's efforts to solicit input on remaining areas of its cybersecurity requirements and how FBI will use that input when making revisions to its requirements. Further, it is not yet clear how FBI intends to solicit input from key state agency IT stakeholders, such as chief information officers or chief information security officers, who have previously identified conflicts among federal agencies' requirements as burdensome and problematic.

To fully address our recommendation, FBI will need to complete efforts to solicit input from federal and state agency stakeholders, including state IT stakeholders as appropriate, on its cybersecurity requirements before determining changes it will make to address variances among federal agencies' cybersecurity requirements for states. Coordinating to address variances in federal agencies' cybersecurity requirements could help to significantly reduce cost, time, and other burdens resulting from these variances.

**Recommendation:** The FBI Director should revise its assessment policies to maximize coordination with other federal agencies to the greatest extent practicable.

**Action Needed:** The FBI agreed with this recommendation. As of February 2022, the FBI stated that staff from its CJIS Audit Unit held several discussions with officials from the CMS, IRS, and SSA to share information on the assessment processes for state agencies, such as what agencies and data are included in assessments, previous assessment results, and the potential for further coordination of assessment schedules. The FBI noted that it expects to hold these discussions biannually. In addition, the FBI solicited input from these federal agencies through its CJIS Security Policy Modernization Task Force. The FBI noted that it expects to further align its CJIS policy with guidance from NIST to be more consistent with how other federal agencies use this guidance in their security policies. FBI noted that once it has transitioned to a more robust adoption of the NIST security framework, it would revisit any areas of assessment coordination with the other federal agencies. FBI did not have a time frame for completing these efforts.

To fully implement this action, FBI needs to assess the input it has received from other federal agencies and determine what changes it can make to its assessment policies and procedures to enhance coordination. Until FBI revises its assessments polices, the agency may be placing unnecessary burdens on state officials' time and resources in responding to overlapping or duplicative requests and inquiries, retesting controls that have already been evaluated, or reporting similar findings.

**High Risk Area:** Ensuring the Cybersecurity of the Nation

**Director (Acting):** David Hinchman, Information Technology and Cybersecurity
**Contact information:** HinchmanD@gao.gov, (214) 777-5719

**Improper Payments**

*Improper Payments: Selected Agencies Need Improvements in Their Assessments to Better Determine and Document Susceptibility.* GAO-19-112. Washington, D.C.: January 10, 2019.

**Recommendation:** The Attorney General should revise DOJ's process for conducting improper payment risk assessments for Law Enforcement to help ensure that it results in a reliable assessment of whether the program is susceptible to significant improper payments. This should include preparing sufficient documentation to support DOJ's risk assessments.

**Action Needed:** DOJ disagreed with this recommendation. DOJ believes (1) its risk assessment methodology provides DOJ management with a reasonable basis for determining whether the Law Enforcement program is susceptible to significant improper payments and (2) its risk assessment documentation is adequate and meets all of the requirements in the Improper Payments Information Act of 2002, as amended.[11] We continue to believe this recommendation is appropriate because DOJ's risk assessment documentation, among other things, did not adequately demonstrate whether a program is or is not susceptible to significant improper payments.

In order for DOJ to address this recommendation, DOJ needs to maintain risk assessment documentation that adequately demonstrates how DOJ determined the weighting of the risk factors, the numerical risk level ranges, and whether a program is or is not susceptible to significant improper payments. Without properly documented risk assessments, DOJ cannot demonstrate whether improper payment estimates should be prepared for this program. In addition to affecting the program's and the agency's estimate of improper payments, this could potentially affect the governmentwide improper payment estimate, and hamper efforts to reduce improper payments.

**Director:** M. Hannah Padilla, Financial Management and Assurance
**Contact information:** PadillaH@gao.gov, (202) 512-5683

(105703)

---

[11]On March 2, 2020, the Payment Integrity Information Act of 2019 (PIIA) repealed the Improper Payments Information Act of 2002, the Improper Payments Elimination and Recovery Act of 2010, and the Improper Payments Elimination and Recovery Improvement Act of 2012. Although PIIA repealed the legal provisions underlying our recommendation, it also enacted substantially similar requirements as a new subchapter in Title 31 of the U.S. Code. We therefore have not altered the status of this recommendation.



This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through our website. Each weekday afternoon, GAO posts on its website newly released reports, testimony, and correspondence. You can also subscribe to GAO's email updates to receive notification of newly posted products. |
| Order by Phone | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's website, https://www.gao.gov/ordering.htm. <br><br> Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. <br><br> Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| **Connect with GAO** | Connect with GAO on Facebook, Flickr, Twitter, and YouTube. <br> Subscribe to our RSS Feeds or Email Updates. Listen to our Podcasts. <br> Visit GAO on the web at https://www.gao.gov. |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact FraudNet: <br><br> Website: https://www.gao.gov/about/what-gao-does/fraudnet <br><br> Automated answering system: (800) 424-5454 or (202) 512-7700 |
| **Congressional Relations** | A. Nicole Clowers, Managing Director, ClowersA@gao.gov, (202) 512-4400, U.S. Government Accountability Office, 441 G Street NW, Room 7125, Washington, DC 20548 |
| **Public Affairs** | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7149 <br> Washington, DC 20548 |
| **Strategic Planning and External Liaison** | Stephen J. Sanford, Managing Director, spel@gao.gov, (202) 512-4707 <br> U.S. Government Accountability Office, 441 G Street NW, Room 7814, <br> Washington, DC 20548 |



Please Print on Recycled Paper.