UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 22-CV-05209-GJP |
| Plaintiff, | : | |
| | : | |
| vs. | : | Philadelphia, Pennsylvania |
| | : | January 22, 2024 |
| AMERISOURCEBERGEN CORPORATION, | : | 1:05 p.m. |
| AMERISOURCEBERGEN DRUG | : | |
| CORPORATION, INTEGRATED | : | |
| COMMERCIALIZATION SOLUTIONS, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| . . . . . . . . . . . . . . . . . | : | |

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE GERALD J. PAPPERT
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES:</u>

For the Plaintiff:             Landon Y. Jones, Esq.
                               U.S. Attorney's Office
                               615 Chestnut Street, Suite 1250
                               Philadelphia, PA  19106


For the Plaintiff:             Jordann R. Conaboy, Esq.
                               Department of Justice
                               U.S. Attorney's Office
                               District of New Jersey
                               970 Broad Street, Room 6055
                               Newark, NJ  07302


For the Plaintiff:             Amy DeLine, Esq.
                               Department of Justice
                               Liberty Square Building
                               450 5th Street, N.W., Suite 6400
                               Washington, D.C. 20001

APPEARANCES: (Continued)


For the Defendants:            Abigail M. Pierce, Esq.
                               Joseph J. Mahady, Esq.
                               Anne Bohnet, Esq.
                               Robert A. Nicholas, Esq.
                               Thomas H. Suddath, Jr., Esq.
                               Reed Smith LLP
                               1717 Arch Street, Suite 3100
                               Philadelphia, PA  19103


For the Defendants:            Meredith S. Auten, Esq.
                               Morgan Lewis & Bockius LLP
                               1701 Market Street
                               Philadelphia, PA  19103


Court Recorder:                Jeff Lucini
                               Clerk's Office
                               U.S. District Court


Transcription Service:         Jessica B. Cahill, CER/CET-708
                               Maukele Transcribers, LLC
                               467 Maukele Place
                               Wailuku, Maui, HI  96793
                               Telephone: (808)298-8633


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1  JANUARY 22, 2024                                    1:01 P.M.

2          THE COURT:  All right.  So I have all of the names.  I

3  won't do a roll call, but I know who you are.

4          I've read everything you submitted.  Thanks.  I

5  appreciate it.  You've done, obviously, a lot of work and given a

6  lot of thought to your proposed discovery plan and notably within

7  that, right, your proposed timeline for everything.  And I

8  understand this isn't a 90-day discovery schedule case, and I'm

9  going to assume that, you know, you gave a lot of thought and

10  discussion to the schedule.  But I do have to ask, is everybody

11  really sure that it has to be this long?

12          We're talking about trying the case -- first of all,

13  you give a trial date, I think, did I see July 19 of 2027?  Who

14  in this room is going to tell the jurors that they're going to be

15  here for eight weeks throughout July and August?  Who wants to --

16  who's volunteering for that duty?  Because I'm not doing it.  So

17  let's take that one off the table.

18          But, no, in all seriousness, we're talking about, you

19  know, three years for fact discovery.  Two years, excuse me, for

20  fact discovery, and then two-and-a-half for all discovery, and

21  then three-and-a-half for trial.

22          Realizing I'm going to give this group a little more

23  deference than the usual lawyer or two in the standard case, who

24  wants to talk about what thought you put into the timeline?

25          MR. JONES:  Your Honor, I'm happy to begin.

```
 1                THE COURT:  All right.

 2                MR. JONES:  So I'm Landon Jones for the United States.

 3                THE COURT:  Okay.

 4                MR. JONES:  We put a good deal of thought into this.  I

 5    mean, this case is a big case, right.  We're talking about 70

 6    fact depositions from the parties, not to mention the third party

 7    discovery depositions.  That is, you know, a lot in and of

 8    itself.  And the document load here is really big.

 9                THE COURT:  Yeah.

10                MR. JONES:  Now, we've already done a good amount of

11    discovery --

12                THE COURT:  Yeah, thank you for that.  I saw, yeah.

13                MR. JONES:  -- in the course.

14                THE COURT:  Yeah.

15                MR. JONES:  Even before the complaint was filed of

16    Amerisource's files as well as some third party discovery.  But

17    we recognize that there's going to be some reciprocal discovery

18    of the Government in this case, and that --

19                THE COURT:  The nerve of them.

20                MR. JONES:  Yeah.  Right.  And so that's going to be a

21    complicated and, you know, probably a slow process.  You know,

22    slower than we all might like, but it's just the reality of the

23    situation.

24                THE COURT:  Why?  Because you're the Government?

25                MR. JONES:  No.  Well, I mean, partly because there's
```

1  going to be some specific Government interests at stake in these

2  documents.  Like, if -- we know that Amerisource would like to

3  seek investigative files from DEA, for example, and those are

4  going to contain lots of privileged types of documents, like, you

5  know, grand jury information and things like that.  And that's a

6  big load to process -- deliberative process-type documents.

7         And so that's going to be a laborious process that

8  we're going to have to work our way through.  And, you know,

9  we've already started on that and, you know, certainly we're

10 doing our best to process that stuff as best we can, but it's

11 going to be a lot.

12        And, you know, there's a lot.  You know, their initial

13 discovery requests are, I think, over 100 requests for production

14 of documents, and we're already in the process of working

15 cooperatively to try to frame those in a way that we can agree

16 and we can meet and confer on the scope of those requests.  But

17 even just kind of meeting and conferring on that is going to take

18 a little bit of work.

19        And then working with the DEA documents coming from us,

20 the DEA is, you know, diffused.  It's spread out.  There's

21 various regional offices all over the country.  And so that's a

22 process of collecting those documents, processing those

23 documents, and they also may contain competitively sensitive

24 information, you know, from Amerisource, but also from

25 potentially Amerisource's competitors, its customers, things like

1   that.  And we're working to address that through a protective

2   order, which we're getting close on.  We're not quite there to

3   submit it to the Court, but I think we're going to finalize that

4   really, in short order.

5             THE COURT:  Okay.

6             MR. JONES:  So there's -- then, of course, there's

7   third party discovery as well, that really is going to go into

8   the heart of the case, like some of the customers at issue here,

9   as well as consultants that were working with in Amerisource in

10   developing supporter monitoring programs.

11            So, I mean, that's kind of a flavor for the types of

12   issues we're dealing with and why we really wanted to be kind of

13   proactively seeking a long discovery period, really to minimize,

14   I think, ultimately the burden on the Court, so that we don't

15   find ourselves up against the wall.

16            THE COURT:  That part of it I like.

17            MR. JONES:  Yeah.  I thought you might.

18            THE COURT:  Well, you get to one of the questions I was

19   going to ask, which is, is this the time you really feel that you

20   believe you need, or are you padding it so that you don't have to

21   come back to me and ask for more time?  Because in the latter

22   situation, what you're saying is, well, we don't really need it,

23   but just in case.  Is it the former and not the latter?

24            MR. JONES:  This is truly our good faith, kind of heavy

25   lift estimate of how we're going to get this done --

```
 1              THE COURT:  Okay.
 2              MR. JONES:  -- without -- you know, hopefully without
 3    coming back to you.  Without coming back to you, let's say.
 4              THE COURT:  Okay.  Yeah.  Yeah.  Okay.  I want to
 5    obviously get any thoughts on this that the Defense might have.
 6    But a couple of questions.  One.  At any point, is it appropriate
 7    for the Court or for the papers to reflect the new name of the
 8    corporation, as in changing the caption or -- I mean, I, in my
 9    opinion, refer to Amerisourcebergen Corporation as such because
10    that's what all the paper was to that point.  But I didn't know
11    if Amerisourcebergen Corporation have you given that any thought
12    or whatever you might think is most appropriate.
13              The alleged conduct would have been taken -- would have
14    taken place at a time when it was Amerisourcebergen Corporation.
15    What are your thoughts on that?  Are you Mr. Nicholas?
16              MR. NICHOLAS:  I am.
17              THE COURT:  All right.
18              MR. NICHOLAS:  I can't believe I'm punting.  The very
19    first question you asked to someone else.
20              THE COURT:  Okay.
21              MR. NICHOLAS:  Ms. Bohnet is probably -- she's put a
22    lot of thought into this, so I'm going to let her try to tackle
23    this seemingly simple question.
24              THE COURT:  I didn't think it was that complex, but,
25    Ms. Bohnet, go ahead.
```

1          MR. NICHOLAS:  To me it is.  But go ahead.

2          THE COURT:  I hope this isn't a sign of things to come.

3          MS. BOHNET:  Oh, it's not.  It's not.  You know, we

4    obviously have other litigation going on --

5          THE COURT:  Right.

6          MS. BOHNET:  -- related to opioids that's been going on

7    for many years now.  In that context, the approach that the

8    company's taken is to refer to itself as Amerisourcebergen

9    Corporation, now known as Cencora.  Amerisourcebergen Drug

10   Corporation, the wholesale distributor subsidiary, has not

11   changed its name.

12         THE COURT:  Right.

13         MS. BOHNET:  So that makes it a little bit more

14   complicated.  We did do a little bit of research into this, and

15   it seems to us that it's fine to keep using Amerisourcebergen

16   Corporation.  So that would be our preference, unless anyone --

17   unless Your Honor has concerns.

18         THE COURT:  No, it was clearly, what is your

19   preference?  And if at any point that changes, you'll let me know

20   and the paperwork can reflect, you know, whatever.  Would you

21   like -- to the extent I refer to your client you want to just

22   keep it as Amerisourcebergen Corporation, or do you want me to do

23   the now known as Cencora?

24         MS. BOHNET:  I think Amerisourcebergen Corporation is

25   fine.

```
 1              THE COURT:  Fine.

 2              MS. BOHNET:  Thank you.

 3              THE COURT:  No problem.

 4              MS. BOHNET:  Thank you, Your Honor.

 5              THE COURT:  You could have handled that, Mr. Nicholas?

 6              MR. NICHOLAS:  I don't know if I could.  Maybe.

 7              THE COURT:  Okay.  Good.  Second, I have only had one

 8   case, which was a group of cases, class actions, where I needed

 9   to employ a Special Master.  I think it's premature for any of us

10   to think about that now, or unless maybe you'll tell me, no, it's

11   not.  But, you know, you're referencing your efforts to work

12   things out and things that could be coming, you know, my way.  If

13   this becomes something where we're bogged down in discovery

14   issues and disputes, let me throw out the fact that this might

15   be, from my perspective, an appropriate case for the appointment

16   of the Special Master.

17              I don't know if any of you had any thoughts on that at

18   this early stage, but that's just something I see coming as a

19   possibility.  Not definite at all.  Just how things go, right.

20   And I wouldn't use -- I'm not smart enough to rely as much as I

21   should on the offices of the Magistrate Judge, which is Judge

22   Hey.  And I'm just one of those judges who handles my discovery

23   disputes myself.  Part of my process in doing that is as you'll

24   --  I don't know if it's stated in my policies and procedures,

25   but I always say at the Rule 16, if you have any discovery
```

1   disputes, please don't file any motions to compel.  Send me a

2   letter, tell me what the problem is.  We'll get on the phone and

3   we'll work it out.

4        The nature and scope of the discovery disputes in this

5   case may not lend itself or themselves to such, you know,

6   comparatively informal resolution.  And I didn't know if you had

7   any thoughts on that yet.  But if we're getting stuff that's

8   really kind of, you know, weighty and meaty and things that now

9   I've got to think about an order and a written opinion on and all

10  that stuff, maybe we think about a Special Master at the right

11  time.  Any thoughts on that to this point?

12       MR. NICHOLAS:  My only reaction is I don't think we

13  need -- I would agree with you that it's premature or unnecessary

14  at the moment.  We're working together so far, pretty well.  I

15  also think -- you know, it will be good to turn to you in the

16  first instance and see how that's going.  So I would wait.

17       THE COURT:  The first instance doesn't worry me.  The

18  fourth, fifth, sixth, seventh --

19       MR. NICHOLAS:  Yeah.

20       THE COURT:  -- yeah, that's what starts to bother me.

21       MR. NICHOLAS:  Yeah, yeah.  Well, maybe we won't have

22  four, or five, or six, or seven.

23       THE COURT:  You get your one free bite.

24       MR. NICHOLAS:  One free bite of that, great.  So

25  anyway, I guess I'm just sort of agreeing with what you're

1  saying.

2          THE COURT:  Okay.

3          MR. NICHOLAS:  You know, seems fine to wait.

4          THE COURT:  Mr. Jones, any difference of opinion?

5          MR. JONES:  That makes sense to me, Your Honor.

6          THE COURT:  Yeah.

7          MR. JONES:  It's not something we've discussed and

8  really haven't had reason to discuss at this point.  So maybe

9  it's a bridge we cross when we get to it.

10          THE COURT:  Okay.  I have a very fine lawyer in town

11 who's done a very good job in a class -- in a spew of class

12 actions with two well-armed, well-populated opponents who

13 literally cannot agree on anything.  And that's worked out fine.

14 You've already agreed to more before the Rule 16 than they have

15 in now seven years of litigation.  So I guess we're doing better.

16          Okay.  Is there anything anyone else would like to say

17 about the proposed schedule or the timeline for the case?  Sir.

18          MR. MAHADY:  Good afternoon, Your Honor.  Joe Mahady.

19          THE COURT:  How are you?

20          MR. MAHADY:  ell, thanks.  How are you?

21          THE COURT:  Good.

22          MR. MAHADY:  We do agree with the Government that two

23 years is necessary for fact discovery.  And one point of emphasis

24 from the Defense.  We think it's going to be critically important

25 early on in the discovery period to identify the alleged

1  violations at issue in this case, which is going to identify the

2  population that we're going to focus on, but also the customers

3  that we're going to focus on.

4          Flowing from the identification of the alleged

5  violations is going to be discovery into the customers, which I

6  think the Government agrees.  And much of that will involve third

7  parties, possibly the customers themselves, possibly State Boards

8  of Pharmacy.  Based off of our experience, that can take quite an

9  amount of time.  And so for that additional reason and given that

10 there's going to have to be some sequencing of this, we do think

11 two years is appropriate and necessary here.

12          THE COURT:  Okay.  I appreciate that too.  And you

13 raised an issue I was going to talk about as well, which is third

14 party discovery, and I know you touch on that in your submission.

15 What I would typically say to the lawyers is if you're going to

16 subpoena any entities, particularly for records, and you need any

17 kind of release or authorizations to do so to exchange them.

18 This wouldn't be that situation.  They wouldn't have the releases

19 or the authorizations.

20          All I would say is, and you have enough time and you'll

21 sequence it in, you know, the order that's best for everybody, to

22 the extent -- as soon as you kind of realize who you're going to

23 need stuff from to get that process started as soon as you can so

24 that we're not all hung up by summer calcitrant, a third party

25 recipient who doesn't think that they have to do anything because

 1   I have less than direct jurisdiction over them.

 2             Now, we can change that, but I don't want us to get

 3   held up.  So I would say advance with your third party discovery,

 4   A) on the timeline that's best for you, but b, as soon as you're

 5   able to minimize any third parties holding any of you guys up and

 6   ladies.

 7             Okay.  You will be prepared to discuss -- your

 8   submission says you'll be prepared to discuss the processes for

 9   settlement.  What are those processes?

10             MR. JONES:  Your Honor, so --

11             THE COURT:  Are they anything other than the line that

12   follows, which is, you know, where you have to get authority

13   from?

14             MR. JONES:  That's a very significant part of it, yes.

15   You know, that's meant to preview essentially that coming here

16   today, you know, unlike, perhaps --

17             THE COURT:  I can't believe you're not in agreement.

18   That's an outrage.  It's a waste of my time.

19             MR. JONES:  We're always going to have to seek

20   authority from, you know, the respective decision makers --

21             THE COURT:  Your client. Yeah.  Yeah.

22             MR. JONES:  -- the Department of Justice to be able to

23   have authority to settle.

24             THE COURT:  Well, that I understand.  But are you

25   warning me that that answer could take a long time to come or

 1   will there -- if there is an appropriate time, if we get to

 2   crunch time, will there actually be someone on the other end of

 3   the phone, if you need them?

 4             MR. JONES:  I think if we proceed to a mediation, for

 5   example --

 6             THE COURT:  Right.

 7             MR. JONES:  -- we're going to do everything we can to

 8   front load that process so that we walk into there ready.  We

 9   know, you know, what our position is --

10             THE COURT:  Right.

11             MR. JONES:  -- and we're ready to go.  And so that --

12   you know, I don't know much what else to say beyond that.

13             THE COURT:  Okay.

14             MR. JONES:  That's what we can do.  And, you know, I've

15   been in -- I handle a lot of defensive cases also in this Court

16   for the Government, and that sometimes we need to call back to

17   agency counsel to make sure we have the authority we want and

18   then every now and then we might change our authority in the

19   course of a settlement conference.  This is going to be a more

20   formalized process than that, I would think.

21             THE COURT:  You raised the word mediation, and the

22   first order of business in my scheduling order is always a

23   referral to Magistrate Judge Hey for settlement purposes.  And

24   that will be in the order anyway because that then gets this case

25   on Judge Hey's docket, if he will.  But has your experience,

 1  individually or collectively, told you that in a case like this,

 2  if you're going to pursue a process, it would likely be with a

 3  private mediator as opposed to the magistrate judge or had you

 4  given any thought to that as well?

 5          MR. JONES:  Your Honor, that's something that we've

 6  actually been kind of discussing right now.

 7          THE COURT:  Okay.

 8          MR. JONES:  You know, since we're in the midst of

 9  figuring out what might be the best forum, you know, the most

10  productive, efficient forum to conduct future settlement

11  discussions --

12          THE COURT:  Oklay.

13          MR. JONES:  -- and that's something that's, you know,

14  actively being discussed.

15          MR. NICHOLAS:  We each know where each other lives, and

16  we each know each other's phone numbers, and we have communicated

17  very recently on this subject.  We're always willing to talk

18  about, you know, processes for settlement.  We did mediate.

19  There was a mediation a year ago, which was not successful.

20          THE COURT:  Okay.

21          MR. NICHOLAS:  And so --

22          THE COURT:  Does my ruling on the potential scope of

23  the damages change the dynamic with respect to a mediation issue

24  at all?

25          MR. NICHOLAS:  It's early to answer that question --

```
 1                THE COURT:  Okay.

 2                MR. NICHOLAS:  -- is really my answer.

 3                THE COURT:  That's fair enough.

 4                MR. NICHOLAS:  The only thing I want to say is it is

 5    very important, from our point of view, to start the case, to

 6    take discovery, because we've taken none.  They've obviously had

 7    the opportunity --

 8                THE COURT:  Right.

 9                MR. NICHOLAS:  -- to have a lot of information over 12

10    years.  We need to put it as directly as possible, get going, and

11    balance the record here.

12                THE COURT:  That's fine.

13                MR. NICHOLAS:  So that's where we're at.

14                THE COURT:  So you attempted to mediate this case, this

15    dispute, before the complaint was filed?

16                MR. NICHOLAS:  Yeah.

17                THE COURT:  Did you use a private mediator?

18                MR. NICHOLAS:  Yes.

19                THE COURT:  Okay.  Would that person or persons be

20    available to you?  Do you know, going forward, given his or her

21    history with the case?  And, if so, does it make any sense to

22    give that person or persons a heads up and get on their schedule

23    in case -- just in case?  Because as you guys know, and as I've

24    found, when the parties come to me halfway through the case and

25    say, we've decided to mediate, then it's, oh, well, we can't get
```

1    -- you know, we can't get on -- the next open date for the

2    mediator is, you know, August 14th, and so we lose a big chunk of

3    time.  And I was just trying to -- you've probably thought of all

4    this, but just trying to maybe eliminate that as a chunk of time

5    we could lose.

6              MR. NICHOLAS:  Don't know the answer to the question of

7    whether it makes sense to ever go back to that mediator or not.

8    It may not.  I think we would want to talk to the Government

9    about it --

10             THE COURT:  Okay.

11             MR. NICHOLAS:  -- but understand what you're saying.

12             THE COURT:  Okay.  Okay.  Did you wish to say anything

13   on that?

14             MR. JONES:  Nothing more to add on that, Your Honor.

15             THE COURT:  Okay.  That's fine.  I'm going to respect

16   and defer to your timeline.  We have good lawyers and a lot of

17   them, and a very thorough discussion of this and some experience

18   on how these cases can play out involving these types of entities

19   and Governmental agencies.

20             So it's important to know what you don't know, and what

21   I don't know is a better alternative to what you've proposed.  So

22   I have no problem with that.  And I want to respect the time that

23   you've put into this.  I won't be offended if there's no

24   dispositive motion, just so you know.  Don't worry about that.

25   No need for phase discovery.  I agree.  Beyond the proposal to

1    stagger, fact and expert, I agree.  That's what I would have

2    asked you to consider anyway.

3            A protective order is something I will gladly sign for

4    you.  My policies and procedures speak to those as well, as long

5    as I have the ability to modify it in the interest of justice,

6    with appropriate notice to the parties.  That's all fine.  I'll

7    respect how you can come to agreement on things.

8            I appreciate your negotiations and agreements with

9    respect to the scope of discovery and depositions.  All,

10   obviously, okay if done by agreement with counsel, and those all

11   seem very reasonable to me, both paragraph four and footnote one

12   on page four.  Your proposal with respect to ESI.  Happy to sign

13   off on that as well.  Third parties we've talked about.

14           What I'll do is -- I do notice that in your proposed

15   timeline, you do not include a date for dispositive motions,

16   responses, and all that stuff.  I like a schedule without that in

17   it a lot better.  So I'm happy to take the dates that you have

18   submitted on page 5, and kind of mold them into my standard form

19   scheduling order.  So can I do that as is?

20           And then if there's the threat of a dispositive motion,

21   you can warn me at the appropriate time and we can rejigger

22   things as needed.  Is that all right?

23           MR. NICHOLAS:  That' fine with us.

24           MR. JONES:  That makes sense, Your Honor.

25           THE COURT:  All right, good.  Okay.  Is there anything

```
1   anyone else wanted to say with respect to discovery, or
2   scheduling, or anything?  My policies and procedure str -- I'm
3   sure you've read them all.  Some of them have less relevance to a
4   case like this than a standard civil dispute.  But if you have
5   any questions on any of that stuff, please call us.
6          The referral to Judge Hey, the discovery dispute issue,
7   potential for a special master if needed at the right time.
8   Mediator.  I think we've covered the big ones.  Mr. Jones.
9          MR. JONES:  Your Honor, we submitted --
10         THE COURT:  I was going to get to that next.
11         MR. JONES:  Okay.
12         THE COURT:  Yeah.  So I was just wrapping up scheduling
13  and discovery.  Anything else on schedule or discovery?  No?
14  Okay.  Mr. Jones, what is this about, the proposed stipulation?
15  I mean, I know what it's about.  I think a better question is, is
16  this really necessary?
17         MR. JONES:  I think so, Your Honor.
18         THE COURT:  And the follow-up question to that is, are
19  you sure this is necessary?
20         MR. JONES:  Yes, Your Honor.  So the motion -- the
21  stipulation is for a schedule for a motion to strike certain of
22  the Defendant's affirmative defenses.
23         THE COURT:  So what would -- can you give me an example
24  or two?
25         MR. JONES:  Yes.  So it would be principally focused on
```

1    the equitable defenses stated in Amerisourcebergen and the

2    Defendant's answer, right.  There are very strict limitations on

3    the ability of a private party to raise equitable defenses to

4    statutory claims such as what we brought here.  So they have

5    raised defenses for -- I don't have -- well, I've got them in

6    here somewhere, but there are acquiescence and equitable

7    estoppel, things of that nature.

8          And our position is those defenses are legally

9    insufficient as a matter of law.  And so we'd like to --

10         THE COURT:  Why strike -- I mean, you know, motions to

11   strike, I get it.  But why worry about that, because if you're

12   right I can take that up at either a motion in limine stage, or a

13   pretrial conference, or -- do the affirmative defenses affect

14   discovery at all and the time -- either the scope, content, or

15   timeline for discovery?

16         MR. JONES:  I think so.  I think it will help shape the

17   scope of discovery here.  And the reason is, is that --

18         THE COURT:  So if I grant your motion to strike, you'll

19   need far less time on the schedule, right?

20         MR. JONES:  No, Your Honor.

21         THE COURT:  Well, you can't have them both.

22         MR. JONES:  I wouldn't quite make that concession.  The

23   equitable defenses will -- well, they will help shape the course

24   of discovery.  And I think that one of the underlying disputes

25   that is kind of probably pervade a little bit of the discovery

1  approach in this case is going to be -- the Defendants -- from

2  our perspective, this case at its core, is about the information

3  that the Defendants had and what they did with it.  And the

4  Defendants have very much previewed that their defense would

5  likely be very -- much more focused on what DEA was doing at the

6  same time.  And we think that that set of information is really

7  fundamentally a side issue, kind of a tertiary issue to the core

8  dispute in this case, which is --

9          THE COURT:  But an issue in their -- but an issues for

10 the Defense to pursue and, if appropriate, argued to the jury,

11 right?

12         MR. JONES:  I mean, it depends exactly on what

13 information we're talking about and what evidence, and we'll have

14 to address that probably on a case by case basis.  But for here,

15 whether it's actually a viable defense or not, or whether it

16 could be legally, as a matter of law, a viable defense is going

17 to affect how we assess things when we're responding to discovery

18 requests about, well, what's proportional to the needs of this

19 case.

20         And so if we can -- what we would like to do is

21 establish and have the Court confirm that these are fundamentally

22 legally insufficient defenses on the basis of the pleadings.  And

23 so we would ask the Court to strike them.

24         THE COURT:  So what I'm hearing is that there is a

25 degree, or a subset, or a portion, or maybe all of the Defense's

1   argument that this wasn't an issue for the DEA.  The DEA said it

2   was okay.  The DEA didn't have a problem with it.  I understand

3   your point about how in certain cases, certain defenses aren't

4   appropriate in actions brought by the Government.  I don't know

5   what those are and to what extent that's true, though I know you

6   have a basis for telling me that.

7          But why at this stage should I attempt to purport to

8   limit how the defense is going to argue its case?  It doesn't

9   seem to make any sense for me to do that because I would be

10  dealing largely with the unknown, as we all would, because you

11  wouldn't really see yet, because they haven't seen yet why the

12  DEA did or didn't do what they did or didn't do.  Wouldn't that

13  be a better issue for me to take up -- God strike me for saying

14  that -- at a summary judgment stage, or a motion in limine stage,

15  or something like that.  Doesn't that make more sense?

16         It's not going to -- I don't hear you saying, you know,

17  that if the Court rules the way that we believe the Court should

18  rule on this at this point, then there's going to be this whole

19  massive category of discovery that I will have ruled is

20  irrelevant and it will expedite things and reduce the burden to

21  the Government.  I don't hear that.  I hear that it could shape

22  discovery.

23         And the other question I have just, you know, as a

24  practical matter is, is it really safe for me to try to weigh in

25  on that now as opposed to just seeing what the issue is at the

1  end of the day and limiting, if appropriate, what the Defense can

2  argue at trial or what evidence is or is not admissible?  That

3  just seems to be a better way to do it.  Is this motion to strike

4  something that you have done or the Government has done in other

5  cases like this?

6          MR. JONES:  Yes, Your Honor, actually, there was --

7          THE COURT:  And have courts taken them up at the motion

8  to strike stage and stricken affirmative defenses?

9          MR. JONES:  Yeah, there was a recent case in

10  California, the Kaiser case, where the District Court struck

11  affirmative defenses.

12          THE COURT:  He's not asking me to, like, follow what

13  they do in California; is he?

14          MR. JONES:  I'm just doing my best to answer your

15  question, Your Honor.

16          THE COURT:  All right.  Okay.

17          MR. JONES:  There is certainly precedent for it, is all

18  I'm trying to say, including very recent precedent on, you know,

19  fairly analogous patterns here.

20          And so, yeah, I think it would add clarity for the

21  parties as we go about discovery.  I mean, if the Court, you

22  know, were to defer ruling or decline ruling or just, I guess,

23  deny it out of hand, the issue would certainly recur and very

24  likely in the course of discovery disputes.

25          THE COURT:  It sounds very much like it's a legitimate

1  issue for the Government to pursue and, you know, it's a

2  legitimate issue for the Defense to tackle and to explain to me

3  why, no, this really is relevant.  I mean, this is what our

4  defense is going to be, et cetera, et cetera let me hear the

5  Defense's perspective on that.

6        MS. BOHNET:  Thank you, Your Honor.  We agree that it's

7  not necessary at this point.

8        THE COURT:  Is that because that's just what I said, or

9  did you really believe you?

10        MS. BOHNET:  You said it so nicely.  No.  Your Honor,

11  it's a fairly demanding standard for a motion to strike and --

12        THE COURT:  I think the language typically is

13  disfavored.

14        MS. BOHNET:  Yes, they are highly disfavored.

15        THE COURT:  Highly disfavored.

16        MS. BOHNET:  Part of the analysis is whether the

17  Defense could basically never succeed.  And the other part of the

18  analysis is the prejudice to the moving party.  As Your Honor

19  highlighted, a lot of the discovery that we're interested in

20  hearing about what DEA knew and what DEA did and what DEA was

21  telling our client and others in the industry.  That's relevant

22  to our affirmative defenses, and it's also relevant to just our

23  regular defenses, the negligence inquiry, the reasonableness

24  aspect of that.  It's going to all be the same discovery.

25        So we don't really think there's going to be this whole

1  other universe of discovery that would only be relevant to an

2  affirmative defense.  If when push comes to shove, you know,

3  we're asking for something that the Government feels is only

4  relevant to an affirmative defense that they don't think is

5  appropriate, perhaps it would be better to deal with it then.

6  But for now, we think that there's no prejudice here and that the

7  discovery is all going to be taken anyway.

8          THE COURT:  I appreciate that.  Sir, anything to

9  respond to?

10         MR. JONES:  Your Honor, I mean, I think fundamentally,

11 it's the same position I articulated a moment ago.  I think that

12 the parties would benefit from clarity as we proceed through

13 discovery on these issues.  The rule, you know, of course,

14 provides for the striking of legally insufficient defenses, and

15 that's what these are.  These defenses are really not available

16 in this context where Congress has specified for statutory

17 penalties.

18         THE COURT:  Well, what kind of defense would you --

19 give me the best example you could of a defense that Amerisource

20 has raised that you think would be legally, across the board,

21 unavailable to them as they defend their case to the jury.

22         MR. JONES:  Sure.  So one of Amerisource's defenses is

23 waiver, and that's based on the idea that the DEA waived the

24 United States' ability to obtain penalties by continuing to renew

25 the DEA registrations.  All right.  So this is a topic actually

1  even already addressed, to some extent, by the Court in the

2  motion to dismiss ruling that conflicts with the text of the

3  Controlled Substances Act.  DEA agents are just not authorized to

4  make that kind of waiver and --

5         THE COURT:  Would it be limited to waiver, though?

6  Wouldn't the Defendant's argument also be, in part, in addition

7  to maybe a legal issue of waiver but more a credibility attack at

8  trial where it's, how were we to know that what we were doing was

9  wrong when the experts to whom we were submitting this weren't

10  telling us we were doing anything wrong?  That's not waiver per

11  se, is it?  That more goes to their state of mind or their

12  culpability, doesn't it?

13         MR. JONES:  Yes, I think as you're articulating it, it

14  would be offered for --

15         THE COURT:  And how would I be able to draw that line,

16  at this stage, as to what I'm precluding them from arguing and

17  why?

18         MR. JONES:  You would not be precluding any evidence, I

19  don't think by making this ruling at this time, necessarily.  I

20  mean, that would be --

21         THE COURT:  In interpret your whole reason for me to do

22  that is, of course I would, because I would be, in essence,

23  ruling out their ability to obtain discovery on it and,

24  therefore, their ability to present any evidence of it.  So I

25  would be limiting the evidence, right.

1          MR. JONES:  Well, I think what would be happening is

2   that the Court would be setting up kind of the guidelines for

3   discovery.  And, you know, when we're considering proportionality

4   in the course of discovery, of course, fundamental to that is,

5   well, what are the claims and what are the defenses?  And if one

6   of these defenses is off the table, that gets thrown into the

7   mix, right.

8          THE COURT:  Well, let's say one of the defenses, or

9   more correctly, a portion of one of the defenses is off the

10  table.  Let's say you're correct.  I don't know if you are, but

11  let's say you're correct and say, well, they can't argue waiver,

12  but there's got to be something about that conduct that's

13  relevant to another defense they might have.

14         How do I draw that line now, particularly when I don't

15  really see what the evidence is going to be?  I mean, I've seen

16  them characterize it in their motion, of course, but what that

17  evidence is going to be, what that document is going to look

18  like, what that person at the DEA might say, and how they attempt

19  and what their argument is for why it's relevant to the defense

20  of their case?  I won't know that at the time I purport to rule

21  on your motion.

22         MR. JONES:  And we wouldn't be asking the Court to make

23  any particular ruling on a particular document or what have you,

24  and, in fact, if there is --

25         THE COURT:  But you're asking me to make a ruling on

1  categories of stuff that particular documents would fall within,

2  and I wouldn't know what the particular documents are.

3          MR. JONES:  We would be asking you to make a ruling

4  about --

5          THE COURT:  You're getting a sense I'm not real big on

6  this idea?

7          MR. JONES:  I am, and, you know, perhaps I should just

8  sit down and take my lumps, and that's fine.  I've been there

9  before.

10         THE COURT:  We all have.

11         MR. JONES:  Yeah.  So --

12         THE COURT:  Trust me.  And I didn't give up taking

13  lumps once I put this on.

14         MR. JONES:  Very well.  I'll just, I guess, finish by

15  saying we're not purporting to preclude the Defendants from

16  arguing, in the course of discovery, on a motion to compel or

17  what have you, that some document that they want might be

18  relevant to, you know, a negligence based defense or something

19  like that.  We're just asking at the outset; it makes sense to

20  sort of set the guidelines for what the claims and defenses are

21  in the case.  Thank you.

22         MS. BOHNET:  Your Honor, I'll be brief, since I'm

23  hoping you're on our side here, but it feels to us that the

24  Government is trying to limit discovery.  I'm not sure what

25  clarity would be provided other than trying to limit discovery.

1  It sounds like a bit of a burden shift where instead of being

2  entitled to go seek the discovery we think is necessary, we're

3  going to have to file a motion with Your Honor to be allowed to

4  do so.

5       THE COURT:  Or if you seek discovery, the objection and

6  refusal to turn it over would be to cite my ruling saying, I've

7  limited this.

8       MS. BOHNET:  Yes.

9       THE COURT:  And then you'd have to come to me and say,

10  well, this doesn't really fall within what you ordered, and

11  here's why.

12       MS. BOHNET:  Exactly.  Exactly.

13       MS. BOHNET:  The Government has been investigating the

14  company for many, many years now.  We think we're entitled to

15  equally broad discovery.  We think that these issues are going to

16  be very relevant to many aspects of the case, and we just don't

17  see a need to deal with this now.

18       THE COURT:  Yeah, I agree with the Defense.  I do.  You

19  know, Mr. Jones, I can't tell you, you can't file a motion, but

20  I'm not going to sign off on a stipulation for something that I

21  don't think I should be taking up at this point.  If the

22  Government wishes to file a motion, it can file it.  There's a

23  lot I can, you know, do with it.  Obviously, I'd look at it.  I

24  could deny it without prejudice, which would be the most likely

25  route I would take, unless it's something that's just so clear

1    that I would be really comfortable in a case like this having an

2    appellate court saying, yeah, he knew enough about what he was

3    ruling on at the time, and he made the correct ruling and, you

4    know, he drew the lines where they should have been drawn.  And

5    that's -- and I don't feel comfortable yet.  Maybe your motion

6    would clarify all that for me.  I'm sure you would make a good

7    argument, but I'm not going to sign the stipulation and proposed

8    order.

9          I would hope that I could take these issues more as

10   they come, based on what, you know, we see.  And while you did

11   suggest that the motion could provide clarity, or my ruling on it

12   could provide clarity, I'm still not hearing how, look, this

13   issue is clear cut enough and broad enough that we could limit

14   the case to a much more efficient schedule and reduce the burden

15   on the parties for something that's not going to be an issue at

16   trial anyway.

17         But that's not the argument I hear the Government

18   making.  It's more you would like to know kind of what the rules

19   are and where the lines are drawn before we go in, and I just

20   don't think I'm ready to do that yet.  But, you know, as the case

21   proceeds, if the battle lines harden on something there that's

22   more concrete, you know, obviously, I or the special master will

23   be happy to take that up.  I just don't think it's the right time

24   for it.

25         But again, you know, you can -- I can't tell my

1    Government that they can't file a motion.

2            MR. JONES:  Understood, Your Honor.

3            THE COURT:  All right.  Anything else?

4            MR. NICHOLAS:  No, Your Honor.

5            MR. JONES:  No, Your Honor.

6            THE COURT:  All right.  What we'll do, as I mentioned,

7    is we'll take your proposed timeline, we'll blend it into my

8    proposed order.  Another variation on my proposed order would be

9    typically what I would do -- let's see here.  There are no dates

10   in your proposed timeline on the schedule.  There are in the

11   papers for a trial date.

12           In my scheduling order, in a typical case, I would have

13   the pretrial and trial dates in the order, and I would tell the

14   lawyers that I strongly believe that the trial date is the best

15   way to get a case resolved and it's not going to move, absent

16   some extraordinary happenings.  This is a case that's harder to

17   make that threat.  Threat is a terrible word.  Statement.

18           The last line on the schedule is the expert discovery

19   cut off, okay.  While we have a mention of a prospective trial

20   date for the reasons I alluded to earlier, I wouldn't be quick to

21   schedule a trial for that time frame.  But does everyone think

22   it's best that we end the schedule for now at the expert

23   discovery cut off and that the next line on the scheduling order

24   could be a scheduling conference, if necessary, to determine

25   remaining dates?  One might be for summary judgment.  Maybe at

1    that point someone would think they have a viable summary

2    judgment motion.  That's where we could then take up the

3    scheduling of briefing and argument on that.

4          It doesn't seem to make sense for me to try,

5    particularly when we don't know if there's going to be a

6    dispositive motion for me to put in Daubert motions in limine,

7    final pretrial conference, and trial.  Is everyone okay with the

8    schedule ending with the proposed expert discovery cutoff?

9          MR. NICHOLAS:  I think that makes the most sense.

10         THE COURT:  Okay.  Mr. Jones?

11         MR. JONES:  Agreed, Your Honor.

12         THE COURT:  Okay.  Okay.  That's what we'll do.  So

13   we'll take what you've given me, we'll put it into our format.

14   If you need us at any time, let us know.  Is there anything else

15   anybody wanted to take up today?

16         MR. JONES:  No, Your Honor.

17         THE COURT:  No?

18         MR. NICHOLAS:  No, Your Honor.

19         THE COURT:  All right.  Great.  Listen, thanks again

20   for all your hard work and for working so well together to this

21   point.  I hope it continues.  And it's obviously a very

22   interesting case for us and also a case that presents us with an

23   unfortunately relatively rare circumstance of having excellent

24   counsel on both sides of the V.  So thank you for that.  And if

25   you need anything else or have any questions, follow up with

1    chambers.  And if you need to get on the line on anything, you

2    know, let us know.  We'll take care of that.  Okay.  All right.

3    Great stuff.  Thanks, everybody.  We'll turn this around for you

4    as quickly as we can.

5              MR. JONES:  Thank you, Your Honor.

6              MR. NICHOLAS:  Thank you, Your Honor.

7              MS. BOHNET:  Thank you, Your Honor.

8              THE COURT:  You're very welcome.  Thank you.

9         (Proceedings concluded at 1:44 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated: <u>February 27, 2024</u>

_____

Jessica B. Cahill, CER/CET-708