**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,           )
                                     )
           Plaintiff,                )
                                     )
     v.                              )    Civ. A. No. 22-5209
                                     )
AMERISOURCEBERGEN CORPORATION;       )
AMERISOURCEBERGEN DRUG CORPORATION; and )
INTEGRATED COMMERCIALIZATION SOLUTIONS, )
LLC,                                 )
                                     )
           Defendants.

**STIPULATED ORDER RE: ELECTRONICALLY STORED
INFORMATION ("ESI") PROTOCOL**

### I.    PURPOSE

This protocol will govern discovery of electronically stored information ("ESI") in this

case as a supplement to the Federal Rules of Civil Procedure, the local rules, and any other

applicable orders and rules. This order shall apply to the production of hard-copy and electronic

documents by the Parties in this litigation.

 The discovery of documents and ESI by the Parties also shall be subject to the provisions

of orders concerning confidentiality, privilege, and/or protected health information as agreed to

among the Parties and/or entered by the Court.

The Parties reserve all objections under the Federal Rules of Civil Procedure, the local

rules, and any other applicable orders and decision authority other than concerning matters that are

addressed in this order.

Nothing in this order shall be interpreted to require disclosure of irrelevant information or

relevant information protected by the attorney-client privilege, work-product doctrine, or any other

applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this order shall be interpreted to supersede the provisions of orders governing confidentiality, privilege, and/or protected health information entered by the Court in this litigation, unless expressly provided for in such an order.

The Parties are aware of the importance the Court places on cooperation in discovery and commit to cooperate in good faith throughout the matter to facilitate discovery.

## II.    DEFINITIONS

a.    **"Confidentiality Designation"** means the legend affixed to Documents or ESI for confidential or highly confidential information as defined by, and subject to, the terms of the order concerning confidentiality agreed to an/or entered by the Court in this litigation.

b.    **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

c.    **"Electronic Document" or "Data"** means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

d.    **"Electronically stored information" or "ESI,"** as used herein, has the same meaning as in Rules 26 and 34 of the Federal Rules of Civil Procedure and includes Electronic Documents or Data, and computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media.

 **e.** "**Extracted Full Text**" means the full text that is extracted electronically from native electronic files, and includes all header, footer, and document body information.

 **f.** "**Hard-Copy Document**" means documents existing in paper form at the time of collection.

 **g.** "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

 **h.** "**Load files**" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or native format files, as well as the corresponding Extracted Full Text or OCR text files, and containing agreed-upon extracted or user-created metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an email and its attachments) used to load that production set into the document review platform of the Party receiving a production ("Receiving Party"), and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load file for all produced documents with each particular production in accordance with specifications provided herein.

 **i.** "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

 **j.** "**Metadata**" means: (i) information embedded in or associated with a Native File that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii)

information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected.  Nothing in this order shall require any party to manually populate the value for any metadata field.

     **k.**    **"Native Format" or "Native File"** means the format of ESI in which it was generated and/or used by the Party Producing ESI or documents (the "Producing  Party") in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

     **l.**    **"Optical Character Recognition" or "OCR"** means the optical  character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

     **m.**    **"Searchable Text"** means the native text extracted from an electronic document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a Hard Copy Document.

## III.   E-DISCOVERY LIAISON

The Parties have designated e-discovery liaisons responsible for meeting, conferring, and attending court hearings regarding discovery of ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in

this matter. The Parties will rely on the e-discovery liaisons, as needed, to meet and confer about ESI and to help resolve disputes without court intervention.

## IV.     IDENTIFICATION OF DOCUMENTS AND ESI

The Parties agree to meet and confer to discuss (i) the identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review, and production; (ii) additional parameters for scoping the review and production efforts (e.g., application of date ranges, de-NIST'ing, etc.); (iii) potential use and identification of search terms, tools, or techniques; (iv) the identification and production of documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques; (v) the method each Party proposes to use to use to identify and de-duplicate duplicate documents, and any exceptions to such de-duplication the Party proposes to implement; and (vi) the treatment of nonresponsive documents within parent-child families.

The Parties shall disclose if they intend to utilize Technology Assisted Review ("TAR") (including but not limited to predictive coding technologies) and will meet and confer as necessary regarding proposed protocols and quality control. The Parties may use email threading without prior disclosure to the other Parties so long as they ensure unique lesser included attachments are included in the review population.

The Parties further agree to meet and confer to the extent that this Order imposes any undue burden or expense on any Party with respect to its response to any particular discovery request.

Nothing in this order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

## V.    DEDUPLICATION

To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall use reasonable efforts to produce only a single, deduplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

To the extent a party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values.  Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

A Producing Party shall de-duplicate documents across custodians and populate a field of data that identifies each custodian who had a copy of the produced document (the "Duplicate Custodian" field) in addition to a separate field of data identifying the custodian whose document is produced; such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial.  A Producing Party shall use a uniform description of a particular custodian across productions.  Multiple custodians in the "Duplicate Custodian" field shall be separated by a semicolon. Entity/departmental custodians should be identified with a description of the entity or department to the extent applicable.

No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

Hard-Copy Documents shall not be eliminated as duplicates of ESI.

If the Producing Party makes supplemental productions following an initial production,

that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "Duplicate Custodian" field. The overlay file shall include all custodians listed in the "Duplicate Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

## VI.   PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS

a.   <u>Standard Format</u>. Unless otherwise specified in Section VII(b) or pursuant to Section VII(l) below, the Parties shall produce documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its Native Format.

b.   <u>Native Format</u>. Except as provided by Section VII(l) below, the Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, and other file types that cannot be accurately represented in TIFF format in Native Format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Access, Oracle, or other proprietary databases).  For each document produced in Native Format, a responding Party shall also produce a corresponding cover page in TIFF image format, specifying that the document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file.  When the Native File is produced,

the Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.

c.      Processing Exceptions. The Parties will use reasonable efforts and standard industry practices to address and resolve exception issues for ESI that presents processing, imaging, or form of production problems (e.g., encrypted or corrupted files).

d.      Color.   All documents shall be produced in black and white TIFF format. Reasonable requests for images in color will be honored if production in color is necessary to understand the meaning or content of the document.  An image may require color if the color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.   Additionally, word processing documents that contains hidden text and certain redacted documents, as further provided in Section VII(l), shall be produced in color in TIFF format.

e.      Embedded Objects.  If documents contain embedded objects, the Parties shall extract the embedded objects as separate documents and treat them like attachments to the document to the extent reasonably possible. To the extent reasonably possible, images embedded in emails shall not be extracted and produced separately.

f.      Hyperlinks.  Upon request, the Parties agree that they will make reasonable efforts to produce hyperlinked files, if available, within any responsive email or other collaborative communication within the possession, custody and control of the Producing Party.

g.      Load Files.  Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt) containing a field with the full path and filename to files produced in native format and also containing metadata fields identified in Appendix A, to the extent the information is available in the original ESI file and can be extracted

without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations).

h.      .Txt Files. For all documents containing extracted full text or OCR text, the Producing Party shall provide searchable document level .txt files (named using the Bates start "BEGDOC"), which shall reside in the same file directory as the images for such documents.

i.      Bates Numbering and Other Unique Identifiers.  Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files.  All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number.  Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits.  All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document to the extent possible.  If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," along with a log identifying each such file; the associated metadata for the file with the technical problem shall be produced if technically possible.  A

Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

j.      <u>Hard-Copy Documents</u>.   Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files and produced following the same protocols set forth in Section VII(a) above, including the production of OCR text that is generated to make such documents searchable.  Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly.  In scanning all Hard-Copy Documents, Hard-Copy Documents should be logically unitized.  Accordingly, distinct documents should not be merged into a single record, and single documents should not be split into multiple records.  In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), each of the Hard-Copy Documents should be separately scanned, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending documents and attachment fields.  The Parties will make reasonable efforts to unitize the documents correctly.  Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI.  For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC,"  "PROD VOLUME,"  "CUSTODIAN,"  "SOURCE,"  "CONFIDENTIAL,"  "REDACTION,"  and "COMPANY" fields, as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

k.      <u>Confidentiality Designation</u>. To the extent any Document or ESI (or portion thereof) produced as a TIFF image in accordance with this Order is designated as confidential or highly  confidential  under  the  order  concerning  confidentiality  agreed  and/or  entered  in  this

litigation, the Producing Party will brand the required Confidentiality Designation in a corner of any TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates number, to the extent possible.

l.   Redactions. A Party may use redactions to protect attorney-client, work product, or any other applicable privilege or immunity. Other than as permitted by this Order or other court order in this litigation, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions.  Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged or otherwise protected by law from disclosure.[1] Redacted versions of spreadsheets, computer slide presentations, and word processing files containing hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) shall be produced in color in TIFF format except if not reasonably feasible or usable. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

m.   Parent-Child Relationships.  The  Parties  agree  that they will make reasonable efforts to preserve parent-child relationships within a document family (the association between an

---

[1] For simplicity, throughout this protocol we refer to information that is privileged or otherwise protected by law from disclosure (such as materials protected by the work product doctrine, materials subject to grand jury secrecy requirements, materials protected by the Bank Secrecy Act, etc.) as "privileged".

attachment and its parent document or between embedded documents and their parent) that are already in existence from the ordinary course of business.  Responsive non-privileged electronic documents attached to an e-mail or embedded within other electronic documents and hard-copy documents  attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document.

       n.    <u>OCR.</u> OCR software shall be set to the highest quality setting during processing.

       o.    <u>Deviation from Production Specifications</u>. If a particular document or category of documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

       p.    <u>Productions from Other Proceedings</u>.  With respect to the production of documents made by any of the Parties in MDL 2804, *In re National Prescription Opiate Litigation* (N.D. Ohio), or in other similar prescription opiate litigation or investigation, to the extent such documents are reproduced in this litigation, those productions shall be made in the format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files.  A producing party shall not be required or obligated to redo prior discovery collected or produced in any litigation or investigation, including the Government's civil investigation that preceded the filing of this litigation, that was made in compliance with that matter's discovery parameters to the extent there are differences with this Order.  The fact that

prior productions were produced in a different format, including production with different metadata, shall not be used by either Party to change the obligations created by this Protocol.

q.      <u>Use at Deposition</u>. Any document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with document's Bates Number and Confidentiality Designation, as described in Section VII(a), above.

## VII.    PRIVILEGE LOGS

### A.     Specific Privilege Log Protocols

1.      Privilege Logs shall be produced in Excel format that allows for text searching, sorting, and organization of data, and shall be produced either: (a) in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs; or (b) in installments using a consistent format so that the installments can be merged into a cumulative Excel spreadsheet by the receiving party.

2.      The Designating Party shall make reasonable efforts to produce a privilege log within sixty (60) days of a production that substantially completes production for a particular custodian or non-custodial source and shall notify the Receiving Party if additional time is necessary. Privilege logs shall be produced on a rolling basis so as not to delay production of privilege logs. The privilege log shall identify the documents or information withheld or redacted and the basis for any claim of privilege in a manner that, without revealing information itself privileged, will enable the Receiving Parties to assess the applicability of the privilege or protection. When the deposition of a custodian is scheduled for a date following the substantial completion of production of their custodial file, the party shall make reasonable efforts to provide

privilege logs involving documents from the deponent's custodial file no fewer than ten (10) days prior to the deposition, unless otherwise negotiated and agreed to between counsel.

3.      With the exception of communications that fall within paragraph 4 below, each log entry should comply with FRCP 26(b)(5), and include:

a.  a unique identifying number (separate from any Bates numbering), along with a separate column identifying the Bates number(s) of a document claimed to be privileged if produced in a redacted form;

b.  description of the nature of the document, communication, or tangible thing (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable Receiving Parties to assess the claim;

c.  the primary custodian or other identifying information as to the produced source file or production volume associated with the document;

d.  the date of the document or communication to the extent it is reasonably ascertainable;

e.  the authors and recipients of the document or communication, based on the From (or Author), To, CC, and BCC fields from electronically-generated metadata associated with the document, to the extent applicable and reasonably available. For email chains, the parties will provide information gathered from the metadata for the most recent email in the chain. Further, if the attorney(s) giving rise to the privilege claim is/are not within the metadata of the most recent email, the Designating Party will include the name(s) of any such attorney(s) within the description;

f.  if the document is an e-mail communication, the number of pages and the number of attachments, if any;

g.  the subject of the document, based on the Subject field (or other similar category) from electronically-generated metadata associated with the document, to the extent applicable and reasonably available, understanding that the Designating Party may eliminate some or all of this information to the extent that it has a good faith belief that it would reveal information which is itself privileged; and

h.  indication (e.g., with an asterisk or accompanying list) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney).

4.      The Parties agree that documents generated after the filing of the complaint (December 29, 2022) and withheld on the basis of privilege need not be included on privilege logs.

5.      The designating party shall provide—either in the log entries or as a list in a separate Excel spreadsheet appendix to the log—the names that appear on the log along with corresponding email addresses or employer information to the extent such information is reasonably available and electronically generated from the metadata. To the extent that Listserv or group email addresses are provided (as a From (or Author), To, CC, or BCC), the designating party shall make reasonable efforts to identify, upon request, individuals and/or groups of individuals which make up such Listservs or group emails.

6.      In general, to the extent that a party redacts any document it produces on the basis of privilege, the redacted document shall be listed on the party's privilege log and the log shall be produced within sixty (60) days of production of said document (as set forth in paragraphs A.1 through A.6 above). The Parties do not need to log documents in which the only redactions are to protect privileged indexing, tracking, or classification numbers or information, or privileged internal file path or Sharepoint sites that are not substantively relevant to the issues in the litigation.

(Documents in which such redactions exist along with other, substantive redactions must be logged.) To the extent that a party redacts any document for any non-privilege related reason (e.g., personal identifying information), that party shall either specify the basis of the redaction on the production image itself or produce a separate log of any such redactions within sixty (60) days of production of said document. If the redacted document is placed on a log, the log shall follow the same format and include the same type of metadata and information as outlined in Paragraph A.4 above. Any redactions (whether based upon any privilege or for any non-privilege related reason) applied to a document shall be made so that they are easily identified by the Receiving Party (e.g., in black boxes, in white boxes with identifying "redacted" or "privileged" text).

7.     Although the parties shall make reasonable efforts to meet the deadlines outlined in paragraph A.2, this paragraph addresses the procedure to implement when certain privilege claims were not made 10 days prior to depositions. Within seven (7) days after a deposition notice is served, the party defending the deposition will notify the requesting party if there are any privileged or redacted documents from the witness's custodial file that have not yet been placed on a privilege or redaction log (which has been served). In addition to the written notice, within ten (10) days after a deposition notice is served, the parties shall meet and confer regarding the timing of providing a complete privilege log for the documents from the witness's custodial file, and shall promptly present any disputes regarding the privilege log (e.g., contents of or timing of production of the log) to the Court.

8.     With respect to the production of documents made by any Party in MDL 2804, *In re National Prescription Opiate Litigation* (N.D. Ohio), or in other similar prescription opiate litigation or investigations, to the extent such documents are reproduced in this litigation, the privilege logs provided in that other litigation will be provided concurrently with the reproduction.

The fact that privilege logs provided in those other litigations or in the investigation that proceeded the Government's Complaint in this litigation may differ from the agreed-upon format in this Protocol shall not form the basis of an objection nor shall it form the basis of an argument for a format other than that as agreed-upon herein.

### B.      Privilege Challenge Protocols

1.      The parties shall meet and confer in good faith, and endeavor to resolve any disputes (regarding privilege-related claims or challenges) before submitting such disputes to the Court for determination. The following procedure shall constitute satisfaction of the good faith meet-and-confer requirement prior to submitting privilege-related disputes to the Court[2]:

a.      A party challenging a Designating Party's claims of privilege, privilege redactions, or other redactions shall provide written notification of those challenges, including the bases for the challenges and/or requests for additional clarifying information, to the Designating Party, and offer to meet and confer with the Designating Party regarding same. The offer to meet and confer shall, except in emergent circumstances or as agreed to by the Challenging and Designating Parties or as ordered by the Special Master or the Court, provide the Designating Party with multiple alternatives (dates and times) to meet and confer during the seven (7) day period following the date of the written challenge notification.

b.      Failure of the Challenging Party to provide written notification of its challenges or failure of the Challenging Party to offer to meet and confer as outlined above, shall

---

[2] The Court has indicated that it may appoint a Special Master.  Should the Court appoint a Special Master, the Parties understand that the Court may decide for the Special Master to hear privilege challenges in the first instance.

prevent the Challenging Party from submitting its privilege-related challenge to the Court.

c.  If the Challenging Party provides written notification and an opportunity to meet and confer as outlined in Paragraph B.1.a., the Designating Party shall meet and confer with the Challenging Party within the seven (7) day period following the date of the written challenge notification, and shall provide the Challenging Party with a written response (providing further information supporting its claims and/or indicating which privilege claims, redactions, etc., the Designating Party maintains and which it withdraws, downgrades or modifies) within fourteen (14) days following the date of the written challenge notification. These time periods may be modified in emergent circumstances, as agreed to by the Challenging and Designating Parties, or as ordered by the Court or Special Master.

d.  Failure or refusal of the Designating Party to meet and confer with the Challenging Party (as outlined in Paragraph B.1.c above) shall allow the Challenging Party to submit its privilege-related challenge to the Court or Special Master. Failure or refusal of the Designating Party to provide a written response (as outlined in Paragraph B.1.c above) shall allow the Challenging Party to submit its privilege-related challenge to the Court or Special Master.

2.     The procedure outlined in Paragraph B.1 may result in the withdrawing or narrowing of privilege claims, privilege redactions, or other redactions.  To the extent that any such claims or redactions are downgraded, modified, or withdrawn by the Designating Party, as a result of the meet-and-confer process outlined in Paragraph B.1 or on its own accord, the Designating Party shall, within a time frame as agreed to by the Challenging and Designating

Parties, or as ordered by the Court or Special Master, apply any such downgrades, modifications, or withdraws to any other similar or emblematic claims or redactions, and provide written notice to the Challenging Party regarding which other privilege claims, privilege redactions, other redactions, or work product claims have been downgraded, modified, or withdrawn by the Designating Party.

3.      For any challenges remaining following the above procedure outlined in Paragraphs B.1 and B.2, the Challenging Party can submit its remaining challenges to the Court or Special Master according to the guidelines established above for submission of discovery disputes, or as otherwise agreed to by the Challenging Party and Designating Party.

## VIII.    PRODUCTION MEDIA

The Producing Party shall produce documents on readily accessible, computer or electronic media, including CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may agree (the "Production Media").  Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media.  The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced.  If the Producing Party produces documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing

Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

## IX.    COST-SHIFTING

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure to seek cost shifting or apportionment for the costs of electronic discovery.

## X.    THIRD-PARTY ESI

A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Order and the order concerning confidentiality agreed and/or entered in this litigation with the subpoena and state that the Parties in the litigation  have requested that third parties produce documents in accordance with the specifications set forth herein.

The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-party.

If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## XI.    COMPLIANCE AND DISPUTES

The Parties agree to use reasonable efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order. If a Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief

from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## XII.   LIMITATIONS

Nothing in this protocol is intended to or should be interpreted to limit the temporal or substantive scope of discovery, or to affect the right of any party to promulgate a request for discovery, object to a request for discovery, or to seek relief from a request for discovery.

## XIII.   MODIFICATION

This protocol maybe be modified by Order of the Court or by Stipulated Order of the Parties for good cause shown.

IT IS SO ORDERED.

Date:   May 8, 2024                              */s/ Gerald J. Pappert*
                                                 Hon. Gerald J. Pappert

### Appendix A: ESI Metadata and Coding Fields

| FIELD NAME | FIELD DESCRIPTION | POPULATED FOR | EXAMPLE VALUES |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
| Confidential | Confidentiality designation, if any, of the document | All | Confidential<br>Highly Confidential |
| Custodian | Names of all custodians who possessed the document, including deduplicated values, in format: Lastname, Firstname.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B.<br><br>For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | All | Doe, John; Smith, John; Smith, Jane |
| Duplicate Custodian | Names of all other custodians from whom documents were produced who possessed the document. | ESI | |
| Duplicate Custodian File Name | The names of duplicate copies of files from all other custodians from whom documents were produced. | ESI | |
| Duplicate Custodians Directory Path | The file path/directory path correlating to the duplicate copies of files from all other custodians from whom documents were | ESI | |

| FIELD NAME | FIELD DESCRIPTION | POPULATED FOR | EXAMPLE VALUES |
|---|---|---|---|
| | produced. | | |
| Source | Source shall be used in connection with document obtained from third-Parties and identify the third-Party having provided the particular material. If the third-Party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | | |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; Electronic documents | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| Family Date | Date last modified or, for e-mails, sent date of the parent | Electronic documents; E-attachments | 01/01/2015 |
| Family Time | Time last modified or, for e-mails, sent time of the parent | Electronic documents; E-attachments | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 01/01/2015 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |

| FIELD NAME | FIELD DESCRIPTION | POPULATED FOR | EXAMPLE VALUES |
|---|---|---|---|
| DateAccessed | Date document last accessed | Electronic documents; E-attachments | 01/01/2015 |
| Date Last Printed | Date the document was last printed. | E-attachments; Electronic documents | 01/01/2015 |
| Time Last Printed | Time the document was last printed. | E-attachments; Electronic documents | 12:30:00 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Importance | Level assigned by creator | E-mails | High |
| Conversation | E-mail conversation designation | E-mail | Re: Smith Summary |
| Conversation Index | | E-mail | |
| Title/E-Title | Title of document | E-attachments; Electronic documents | Smith Summary |
| Redaction | Basis for redactions in document. | E-attachments; Electronic documents | |
| Has Redactions | Identifies whether a record has been produced with redactions; should be populated with a Y for records with redactions and N for records without redactions | | |
| FileName | File name of original document | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type | Electronic documents; E-attachments | Word |
| File Size | Size of file | All | 40 gb |
| File Extension | The file extension of the document. | E-attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document_12345.doc |
| Author | Document author/creator | E-attachments; Electronic documents | John Doe |
| Company | Party making the production | All | Company X |
| Title | Document Title | E-attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; E-attachments; E-mails | |
| Prod Volume | Production Volume | All | Defendant X Volume 1 |

| FIELD NAME | FIELD DESCRIPTION | POPULATED FOR | EXAMPLE VALUES |
|---|---|---|---|
| File Path | | | |
| AttachDocID | | Electronic documents; E-attachments; E-mails | |
| ATTACHNAME | | | |
| ATTACHRANGE | | | |
| FOREIGN LANGUAGE | | | |
| TIME ZONE PROCESSED | | | |
| LAST MODIFIED BY | | | |
| MESSAGE TYPE | | | |
| CALENDAR MEETING STOP/START | | | |
| RECORD TYPE | | | |
| HAS HIDDEN CONTENT | | | |
| HAS TRANSLATIONS | Identifies whether a document has been produced with translated text | | |
| MESSAGE ID | | | |
| NUMBER OF ATTACHMENTS | | | |
| ORIGINAL FOLDER PATH | | | |
| IS EMBEDDED | | | |
| TextPath or Text FilePath | Relative file path to each extracted text/OCR text file on the production media. | All | \Text\Document_12345.txt |