# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               *Plaintiff,*<br><br>   v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.,<br><br>               *Defendants.* | CIVIL ACTION<br>NO. 22-5209 |

**August 7, 2024**

### MEMORANDUM

    The Court encourages parties to address "routine" discovery disputes through the submission of a joint letter to Chambers explaining the dispute, which the Court will then attempt to resolve, if necessary, on the telephone.[1]

    The United States and AmerisourceBergen Corporation[2] have started that ball rolling with dueling letters, (ECF Nos. 80, 81), but their disagreements are far more than routine and ill-suited for informal resolution. Amerisource's submission is comprised of a single-spaced five-page letter and another seventeen single-spaced pages of argument between the parties while the Government's response adds five more pages and another twenty-seven pages of attached document production requests.

---

[1]     *See* Section II.C.2 of the Court's Policies and Procedures. (https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/pappol.pdf.)

[2]     After the Government filed this lawsuit, AmerisourceBergen Corporation changed its name to Cencora, Inc. (Notice of Corporate Name Change p.1, ECF No. 46.) Defendants AmerisourceBergen Drug Corporation and Integrated Commercialization Solutions, LLC's names remain the same. The Court refers to the defendants collectively as Amerisource.

1

The Court appreciates the parties' efforts to avoid discovery motion practice, but after digesting the submissions the Court remains unsure what exactly Amerisource wants the Court to do. The Government's letter makes that point as well, noting that it is unsure what specific documents Amerisource seeks to compel. And given the breadth of the issues and the level of generality at which they are presented, the Court does not believe a telephone conference is the ideal way to separate the wheat from the chaff.

Taking into account what follows below, the Court asks the parties to continue to negotiate a resolution to their differences. When those efforts are exhausted, Amerisource may file a motion citing the specific document production requests it wants the Court to enforce, supported by a memorandum of no more than ten double-spaced pages. The Government may respond in kind and the Court will rule accordingly, perhaps after oral argument should the Court deem it necessary.

I

The Court detailed this case's factual background in a prior Opinion. *See United States v. Amerisource Bergen Corp.*, No. 22-5209, 2023 WL 7311183, 2023 U.S. Dist. LEXIS 198486 (E.D. Pa. Nov. 6, 2023) (ECF No. 47.) At its core, the United States alleges Amerisource violated the Controlled Substances Act by failing to report suspicious orders to the DEA. The CSA requires each registrant[3] to "design and operate a system to identify suspicious orders" and, "upon discovering a suspicious order or series of orders, notify the Administrator of the Drug Enforcement Administration and the Special Agent in Charge of the Division Office of the Drug

---

[3] A registrant is "any person who is registered pursuant to either" 21 U.S.C. §§ 823 or 958. 21 C.F.R. 1300.01(b).

2

Enforcement Administration for the area in which the registrant is located or conducts business." 21 U.S.C. § 832(a)(1), (3).  The Government seeks civil penalties for each alleged violation.

On June 28, Amerisource wrote the Court detailing persisting discovery disputes.  (Amerisource Discovery Letter pp. 1-2, ECF No. 80.)[4]  The Government responded on July 12.  (Government Discovery Letter p. 1, ECF No. 81.)  At a high level, the parties disagree about the relevance of "internal DEA documents reflecting DEA employees' non-public thoughts regarding the [suspicious order reporting requirement]."  (Government Discovery Letter p. 1.)

II

Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Proportionality depends on several factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*

The party moving to compel discovery "bears the initial burden of proving the relevance of the requested information."  *Houser v. Wetzel*, No. 3:24-603, 2024 WL 1913162, 2024 U.S. Dist. LEXIS 79219, at *9 (M.D. Pa. May 1, 2024) (citing *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)).  If that burden is satisfied, "the party resisting the discovery has the burden to establish the lack of relevance by

---

[4]     Page numbers are those assigned by ECF unless otherwise specified.

demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

### III

The Government has agreed to produce "external communications" between the DEA and Amerisource and "other [r]egistrants[] or industry groups" regarding "the Suspicious Order Monitoring and Reporting Obligations, what constitutes a Suspicious Order, and/or how to operate a suspicious order monitoring system." (Amerisource Discovery Letter p. 8.) These communications include requests for clarification or guidance from the DEA, as well as any responses the DEA provided. (*Id.*)

Negotiations between the Government and Amerisource have not been entirely fruitless. The Government has agreed to produce some internal communications, such as "internal DEA documents that relate to external communications," which include documents discussing communications between the DEA and Amerisource or other third parties. (Government Discovery Letter p. 1.) The Government is also willing to produce "internal DEA documents concerning [Amerisource] and the facts in this case." (*Id.*) And while it has not agreed to produce all internal DEA documents "regarding the interpretation of the [suspicious order reporting] laws," (*id.* at 1-2), the Government has not taken an uncompromising stance. It agrees to produce such documents from "specific DEA personnel," who purportedly gave Amerisource advice inconsistent with the Government's current legal theory. (*Id.*) But it believes "other internal DEA

4

records regarding the [suspicious order reporting] laws" are "not relevant and largely privileged." (*Id.* at 2)

Amerisource believes these materials are relevant to several issues, such as "the nature and inconsistency of DEA's guidance over the years," the DEA's purported awareness and endorsement of uncertainty about the suspicious order reporting requirement's scope, and the reasonableness of Amerisource's conduct. (Amerisource Discovery Letter pp. 3, 8.) It contends these documents "go to the heart of the case," shedding light on what the term "suspicious order" means, what it means for a registrant to "dispel the suspicion" surrounding an order, whether and how the DEA has interpreted applicable caselaw, as well as the DEA's efforts to "clarify" its reporting requirements. (*Id.* at 2.)

The Government sees things differently. Whether Amerisource breached its reporting obligations, the Government contends, is a matter of statutory interpretation, which the Court should resolve without regard to agency employees' private thoughts and postulations. (Government Discovery Letter p. 3.) The Government further notes that while some internal documents "may be relevant" to Amerisource's *mens rea*, it has already agreed to produce those documents. (*Id.*) But since "internal, unofficial musings," were not known to Amerisource, the Government argues, they have no relation to the reasonableness of its conduct. (*Id.* at 3-4.)

While both the Government and Amerisource direct the Court to authority supporting their positions, the Court cannot resolve this broad and somewhat undefined dispute on categorical terms. Amerisource's references to internal DEA "communications" and "documents" cast a wide net and its initial requests for

5

production appear overbroad. For instance, it wants "all Documents regarding the DEA's interpretation and/or understanding of the Suspicious Order Monitoring and Reporting Obligations," including "all internal DEA Communications" and "all DEA external or internal manuals, policies, procedures, guidelines, position statements, training materials, or other internal or external guidance Documents." (Government Discovery Letter p. 17.) It also seeks, among other things, "all Documents regarding any discussion, dispute, disagreement, difference of opinion, confusion, or misunderstanding within the DEA regarding the Suspicious Order Monitoring and Reporting Obligations," and the meaning of "[s]uspicious [o]rder." (*Id.* at 20.)

But the parties' positions on the relevance of communications between two lower-level DEA employees may differ from their positions regarding the relevance of a formal manual composed by higher-level officials. And the legal landscape surrounding agency interpretations of ambiguous statutes is not what it once was. For instance, the Government argues agency interpretations are especially irrelevant now that the Supreme Court has overruled the *Chevron* doctrine and held courts should no longer defer to agencies' interpretations of ambiguous statutes. (*Id.* at 3); *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). But *Skidmore* deference is another matter. Courts may still "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper*, 144 S. Ct. at 2262 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Neither party mentions whether any of this bears on their dispute or, if so, whether they believe a form of deference applies to every type of document Amerisource seeks. Any such potential nuances are swallowed by the sweeping nature of Amerisource's requests and the parties' arguments.

6

And that sweeping nature is the point. The communications and documents Amerisource seek vary greatly in kind. Their relevance does not necessarily rise and fall together. The Government appears to agree, given its willingness to produce some internal communications but not others. The line the Government has drawn is likely not the only relevant one. But the Court cannot determine the relevance of various subcategories of communications without more information. Nor should it raise and resolve issues the parties have not specifically defined and argued.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.